IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| JUAN FERNANDEZ, as husband of | ) | |
| Betty Fernandez, deceased wage earner, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 3:19-cv-458-SMD |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION

## I.    INTRODUCTION

Claimant Betty May Fernandez ("Claimant")[1] filed for a period of disability and Disability Insurance Benefits ("DIB") on November 12, 2015, alleging disability beginning June 28, 2015. The application was denied at the initial administrative level.  Claimant then requested and received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ issued an unfavorable decision, and the Appeals Council denied Claimant's request for review.  The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[2]  *See Chester v. Bowen*, 792

---

[1] Claimant died prior to this suit being filed. Her husband, Juan Fernandez ("Plaintiff"), as Claimant's surviving spouse, submitted Form HA-539 (Notice Regarding Substitution of Party Upon Death of Claimant) to the Social Security Administration and is eligible to receive benefits in this matter.

[2] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

F.2d 129, 131 (11th Cir. 1986).  The case is now before the court for review of that decision under 42 U.S.C. § 405(g).  Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge.  Pl.'s Consent to Jurisdiction (Doc. 12); Def.'s Consent to Jurisdiction (Doc. 11).  Based on the Court's review of the record and the briefs of the parties, the court AFFIRMS the decision of the Commissioner.

## II.    STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3]

To make this determination, the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2011).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative

---

[3]    A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The burden of proof rests on a claimant through Step Four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step One through Step Four. At Step Five, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id.* at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id.* It may contain both exertional and nonexertional limitations. *Id.* at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id.* at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id.* at 1239-40.

---

[4] *McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits brought under Title II of the Social Security Act. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

The Court's review of the Commissioner's decision is a limited one. This Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

4

## III.    ADMINISTRATIVE PROCEEDINGS

Claimant was fifty-two years old as of her alleged onset date of June 28, 2015, and fifty-six by the ALJ's decision denying her benefits. Tr. 17, 27, 160. Claimant completed school through the eighth grade and had past work experience as a retail store manager, a stock clerk, a cashier, an exhibit display representative, and a sales clerk. Tr. 41, 56.

Following an administrative hearing, and employing the five-step process, the ALJ found at Step One that Claimant "has not engaged in substantial gainful activity since June 28, 2015, the alleged onset date[.]" Tr. 22. At Step Two, the ALJ found that Claimant suffers from the following severe impairments: "degenerative disc disease (DDD), chronic liver disease, peripheral neuropathy, osteoarthritis of knees, and obesity." Tr. 23. At Step Three, the ALJ found that Claimant "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" Tr. 24.  Next, the ALJ articulated Claimant's RFC as follows:

> the claimant has the residual functional capacity to perform light work  . . . except lift and/or carry 20 pounds occasionally, 10 pounds frequently. She can stand and/or walk, with normal breaks, for a total of 6 hours per 8-hour workday, and can sit, with normal breaks, for a total of 6 hours per 8-hour workday. In terms of postural limitations, she can never climb ladders, ropes, or scaffolds and never crawl; but can frequently climb ramps and stairs; balance; and can occasionally stoop, kneel, and crouch. In terms of manipulative limitations, she can only frequently perform fine and gross manipulations (i.e. handling, fingering, and feeling) with her bilateral upper extremities. In terms of environmental limitations, she should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation, humidity, extreme cold and extreme heat. Finally, she should avoid all exposure to unprotected heights and can never operate a motor or motorized vehicle in the work setting.

5

Tr. 42. At Step Four, the ALJ concluded that Plaintiff is "unable to perform any past relevant work." Tr. 27. The ALJ next concluded, at Step Five, that the Claimant "has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy." Tr. 28. Based upon the testimony of the VE, the ALJ identified the following as representative occupations: "Supervisor, cashiers," "Supervisor, money room," and "Supervisor, marking room." Tr. 28. Accordingly, the ALJ concluded that Claimant "has not been under a disability . . . from June 28, 2015, through the date of this decision[.]"  Tr. 29.

## IV.   PLAINTIFF'S ARGUMENTS

Plaintiff presents three arguments for the Court's review. First, Plaintiff argues that the ALJ erred by finding that Claimant has no severe mental impairments. (Doc. 13) at 3-7). Second, Plaintiff argues that the ALJ failed to properly evaluate Claimant's impairments under Medical Listing 11.14A. *Id*. at 7-10. Third, Plaintiff argues that the ALJ failed to properly evaluate Claimant's subjective allegations. *Id*. at 10-14.

## V.   DISCUSSION

### A. Whether the ALJ Erred by Finding Claimant Had No Severe Mental Impairments.

Plaintiff argues that the ALJ erred by finding that Claimant had no severe mental impairments. (Doc. 13) at 3-7. Plaintiff's argument is three-fold. First, Plaintiff argues that, because Claimant was diagnosed with *major* depressive disorder, her diagnosis in and of itself suggests that the ALJ should have found Claimant's mental impairments severe. *Id*. at 4. Second, Plaintiff argues that, in finding Claimant's mental impairments non-severe,

the ALJ's reliance on Claimant's ability to perform some activities of daily living was misplaced, as there is no evidence that Claimant engaged in any significant activities on a regular basis. *Id*. Finally, Plaintiff asserts that the ALJ erred by not seeking the opinion of a qualified psychiatrist or psychologist before concluding that Claimant's mental impairments were non-severe. *Id*. at 5-6.

Plaintiff contends that the ALJ's error was not harmless because, while the ALJ found Claimant to have severe impairments at Step Two (thus continuing in the five-step process), the ALJ did not "consider[] the combined impact of [Claimant's] severe and non-severe impairments in determining [Claimant's] residual functional capacity." *Id*. Plaintiff notes that the ALJ "did not include any mental restrictions in the RFC found for [Claimant]." *Id*.

Step Two requires a finding of a severe impairment in order to continue in the sequential process, but nothing more. *See Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824-25 (11th Cir. 2010) ("the ALJ concluded that [the plaintiff] had a severe impairment: and that finding is all that step two requires."). Indeed, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Id*. at 825. "Instead, at step three, the ALJ is required to demonstrate that it has considered all of the claimant's impairments, whether severe or not, in combination." *Id*. (citing *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984)). If an ALJ finds that the claimant has a severe impairment, any error in not finding other impairments to be severe is harmless so long as the ALJ considers all of the claimant's impairments throughout the remainder of

7

his evaluation.  *See Heatly*, 382 F. App'x at 824; *Freeman v. Comm'r Soc. Sec. Admin.*, 593 F. App'x 911, 914 (11th Cir. 2014).

In reviewing the ALJ's opinion in this case, it is clear that the ALJ considered Claimant's impairments throughout the remainder of the evaluation; therefore, any error in failing to identify Claimant's mental impairment as severe is harmless. In Step Three, the ALJ found that Claimant "does not have an impairment or combination of impairments" that met or medically equaled the severity of one of the listed impairments. Tr. 24. In Step Four, the ALJ considered "all symptoms" in determining Claimant's RFC. Tr. 24. Under Eleventh Circuit precedent, "those statements are enough to demonstrate that the ALJ considered all necessary evidence." *Tuggerson-Brown v. Comm's of Soc. Sec.*, 572 F. App'x 949, 951-52 (11th Cir. 2014).

Nonetheless, the ALJ went beyond those blanket statements, demonstrating that she considered Claimant's mental impairments during the third and fourth steps of the analysis. Specifically, the ALJ discussed at Step Three that the record "fails to show marked limitation" in Claimant's understanding, remembering, or applying information; her ability to interact with others; her ability to concentrate, persist, or maintain pace; and in her ability to adapt and manage herself. Tr. 24. During Step Four, the ALJ considered the Third Party Function Report completed by Claimant's daughter-in-law as well as Claimant's statements regarding Claimant's moods and mannerisms. Tr. 26-27. Although the ALJ ultimately discounted that evidence (and provided justification for doing so), it is clear that Claimant's mental impairments—while not found to be severe—were considered by the

ALJ in the remainder of the analysis. Therefore, the record sufficiently demonstrates that the ALJ considered all of Claimant's impairments, even those found to be non-severe, in reaching a conclusion that Claimant was not disabled. Accordingly, the ALJ's error in failing to classify Claimant's mental impairment as severe, if any, is harmless.

Further, the ALJ did not err by finding Claimant's mental impairment non-severe without first obtaining a psychiatric or psychological consultative examination regarding Claimant's mental impairments.

Title 42 U.S.C. § 421(h) states that "[a]n initial determination under subsection (a), (c), (g), or (i) shall not be made until the Commissioner of Social Security has made every reasonable effort to ensure . . . in any case where there is evidence which indicates the existence of a mental impairment, that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment." Thus, the plain language of § 421(h) indicates that the requirement to consult a psychiatrist or psychologist applies to *initial* determinations—not to decisions made by an ALJ. *See Sneed v. Barnhart*, 214 F. App'x 883, 886 (11th Cir. 2006) (noting that "[t]he Third Circuit has held that the normal requirement to order a psychiatric consult pursuant to § 421(h) does not apply to . . . cases heard by an ALJ. *Plummer v. Apfel,* 186 F.3d 422, 433 (3d Cir. 1999) (holding that the § 421(h) consultation requirement applies only to cases falling under § 421(a), (c), (g), (i) at the initial and reconsideration levels.")). Therefore, the ALJ did not err by failing to obtain a mental examination of Claimant

9

pursuant to § 421(h) prior to determining Claimant's mental impairments were non-severe.[5] [6]

Finally, to the extent that Plaintiff is arguing that the ALJ had an obligation independent of § 421(h) to order a mental evaluation of Claimant prior to determining that her mental impairment was non-severe, the undersigned finds that there was sufficient evidence in the record for the ALJ to make that determination without further developing the record. The Eleventh Circuit has held that, although an "administrative law judge has

---

[5] Importantly, Dr. Robert Estock, a state agency psychological consultant, reviewed the record and provided an opinion regarding Plaintiff's mental impairments and functioning. Tr. 60. The opinion of Dr. Estock, as a non-examining state agency medical consultant, is entitled to substantial consideration as a relevant, expert opinion. *See* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i) ("State agency medical and psychological consultants . . . are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation."). Courts have concluded that an ALJ's reliance on a state agency medical consultant's review is appropriate to satisfy any requirement imposed by § 421(h)(1) even where the ALJ did not order a consultative psychological examination. *See, e.g.*, *Parker v. Colvin*, 2016 WL 1092237, at *4 (M.D. Ala. Mar. 21, 2016) ("The record before the ALJ in this case was sufficient to permit the ALJ to assess the severity of Plaintiff's OCD and dysthymia without the need for ordering a consultative examination by a qualified psychiatrist or psychologist."); *Harris v. Colvin*, 2014 WL 584420, at *10 (S.D. Ala. Nov. 12, 2014) ("In this case, Plaintiff is correct that the ALJ did not order a consultative mental examination. However, the record does contain the opinion of State Agency psychologist Dr. Joanna Koulianos, Ph.D., who reviewed Plaintiff's medical records and completed a Psychiatric Review Technique and a Mental RFC Assessment. Thus it is clear that the ALJ complied with 42 U.S.C. § 421(h) in having Dr. Koulianos conduct a review of the medical records and compete a Psychiatric Review Technique[.]"). During Step Four, the ALJ here afforded great weight to Dr. Estock's opinion regarding Claimant's RFC. Tr. 27. Therefore, when considering the record as a whole, it appears that the ALJ considered the opinion of Dr. Estock and gave it great weight, even though the ALJ did not reference Dr. Estock's opinion within the section addressing whether Claimant's mental impairments met or medically equaled a listing.

[6] Plaintiff's reliance upon *McCall v. Bowen*, 846 F.2d 1317 (11th Cir. 1988) is not persuasive. In examining whether a claim should be remanded to the Commissioner based, in part, upon § 421(h), the *McCall* court stressed that remand was necessary on another issue and stated only that the Commissioner should "carefully consider[ ]" whether to order an examination under § 421(h) upon remand. *McCall*, 846 F.2d at 1320 ("Certainly, since the case has to be remanded for proper handling of the overweight problem, the applicability of section 421(h) must be carefully considered."). Therefore, the *McCall* court did not explicitly find that the ALJ erred in failing to order a consultative examination. Further, the *McCall* decision appears to have misconstrued § 421(h) because the Eleventh Circuit has since indicated that § 421(h) does not apply to cases heard by the ALJ, as discussed further above. *See Sneed*, 214 F. App'x at 886. Therefore, the undersigned is not persuaded that *McCall* requires remand of the pending matter.

a duty to develop the record where appropriate," the ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007). In *Ingram*, the Eleventh Circuit determined that the ALJ did not err in failing to further develop the record regarding the claimant's mental capacity by ordering a consultative mental examination because the record, including evidence that the claimant's "depression was alleviated by medication," was sufficient for the ALJ to determine the extent of the claimant's mental impairments. (*Id.*)

Here, in determining that Claimant did not meet a listing for mental impairment, the ALJ noted that there were no treatment records showing that Claimant had limitations in understanding, remembering, or applying information, and that an office visit with her treatment provider found Claimant to have normal recent and remote memory. Tr. 23. As for Claimant's ability to interact with others, the ALJ found that Claimant had mild limitations, and referenced Claimant's own report that she spent time with others and spent daily time with her husband and son. Tr. 23. The ALJ also noted Claimant's report that she "is good at getting along with authority figures." Tr. 23. The ALJ further found that Claimant had mild limitation in concentrating, persisting, or maintaining pace. Tr. 23. In so doing, the ALJ noted that Claimant reported "that she is good at following written and spoken instructions" and that she can pay attention "as long as [she] wants." Tr. 23. Finally, the ALJ found Claimant to be mildly limited in adapting and managing herself, relying upon Claimant's report that she "is good at handling stress and changes in routine." Tr. 23.

The evidence relied upon by the ALJ is sufficient for the ALJ's determination that Claimant did not meet the listing for mental impairment without requiring the ALJ to further develop the record by ordering a consultative mental examination. Accordingly, the undersigned concludes that the ALJ did not reversibly err in failing to order a mental examination of Claimant.

## B. Whether the ALJ Failed to Properly Evaluate Claimant's Impairments Under Per Se Disabling Medical Listing 11.14A

Claimant argues that the ALJ erred by failing to properly evaluate her impairments under Listing 11.14A. To meet medical listing 11.14A, a claimant must have a diagnosis of peripheral neuropathy with "[d]isorganization of motor function in two extremities . . . resulting in an extreme limitation . . . in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities." The Listing defines disorganization of motor function in two extremities as interference in movement in any two extremities due to a neurologic disorder. 20 C.R.F. pt. 404, subpt. P, app.1, § 11.14A. An extreme limitation is defined as the inability to stand and maintain an upright position without assistance from another or an appropriate assistive device; an inability to maintain an upright position while standing or walking without the assistance from another or an

assistive device; or loss of function in both arms that seriously limits the ability to perform fine and gross motor movements. *Id*. at § 11.00D2c.

Plaintiff contends that the record demonstrates that Claimant meets the listing. Specifically, Plaintiff points to the following evidence:

- A neurological examination in July 2015 that revealed numbness in Claimant's arms, hands, legs, and feet, motor abnormalities in the legs, limb ataxia, and sensory loss.
- Plaintiff's statement that in December 2015 she was unable to stand without a walker and unable to stand long even with a walker.
- An August 2017 report that Claimant had constant numbness and tingling in her upper and lower extremities with dragging and weakness of the left leg.
- A September 2017 physical exam that revealed an antalgic gait, weakness of the left dorsiflexion, absent deep tendon reflexes throughout the lower extremities, positive Hoffman's response.
- An October 2017 exam showing diminished sensation in the forefeet.
- A November 2017 exam that documented giveaway weakness and impaired sensation in the legs and fingers.
- Ongoing tingling and numbness, weakness in the legs and arms, and loss of feeling in both legs.
- A December 2017 exam that documented dysesthesias in both legs and arms.

(Doc. 13) at 8-9. Plaintiff argues that the ALJ erred by failing to discuss this evidence in determining that Claimant did not meet the listing and therefore the ALJ's decision is not supported by substantial evidence. *Id*. at 10.

As to the ALJ's failure to specifically discuss the aforementioned evidence in determining that Claimant did not meet the listing, the undersigned finds no reversible error. *See Fleming v. Comm'r of Soc. Sec. Admin.*, 635 F. App'x 673, 676 (11th Cir. 2015) (holding that an ALJ is not required to "mechanically recite" all of the evidence or listings considered). Instead, the undersigned concludes that the ALJ's opinion sufficiently

indicates that Claimant's entire medical record was considered in determining that Claimant did not meet the listing. Specifically, the ALJ stated that "the record fails to demonstrate any significant and persistent disorganization of motor function in two extremities that have resulted in sustained disturbance of gross and dexterous movements or gait and station." Tr. 24. The ALJ continued that the record failed to show "marked limitation in physical functioning and of the following: Understanding, remembering, or applying information [ ], Interacting with others [ ]; Concentrating, persisting, or maintaining pace [ ]; or Adapting or managing oneself [ ]." Tr. 24. Further, the ALJ noted that, while Claimant's representative argued at the hearing that Claimant meets 11.14, there was "no explanation . . . given at the hearing which medical records supports that the claimant meets listing 11.14." Tr. 24.

The undersigned also finds that the ALJ's determination that Claimant did not meet the listing is supported by substantial evidence in the record. In order to meet Listing 11.14A, a claimant must show "[disorganization of motor function in two extremities [ ] resulting in an extreme limitation [ ] in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities." 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.14A. In regards to standing up from a seated position and balancing while standing or walking, an extreme limitation with these activities is defined as the inability to perform these activities without the assistance of a person, walker, two canes, or two crutches. 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.02D2c. Regarding the use of the upper extremities, a claimant must have a "loss of function of both upper extremities . .. that very

seriously limits [the] ability to independently initiate, sustain, and complete work-related activities involving fine and gross motor movements." 20 C.F.R. pt. 404, subpt. P, app. 1, §11.00D2c.

While Plaintiff points to relevant evidence regarding whether Claimant met the listing, Plaintiff does not show that the abnormalities indicated within that evidence meet the listing's requirements. For example, while Plaintiff notes that Claimant had decreased sensation, tingling, numbness, weakness, etc., Plaintiff does not show that this prevented Claimant from standing up, balancing, or using both of her upper extremities without assistance. In other words, Plaintiff fails to show that the referenced evidence resulted in an extreme limitation for Claimant.[7]

Additionally, the undersigned finds that there is substantial evidence in the record showing that Claimant did not meet the listing. Indeed, the record indicates that Claimant "had normal or only mildly antalgic gait and station and no issues with coordination, despite the presence of neuropathy." (Doc. 14) at 9. Specifically, an August 2017 examination showed that, despite complaints of numbness and tingling, Claimant had normal tone and strength in all of her extremities, her gait appeared to be unremarkable, and she could even do heel walking and toe walking. Tr. 476. Similarly, in October 2017, Claimant was ambulating normally, and in November 2017, her gait was unremarkable and

---

[7] While Plaintiff points to evidence that she was unable to stand without a walker and unable to stand for a long period of time with a walker, this evidence is based upon Claimant's own statement, not medical evidence. Therefore, it is insufficient to show Claimant met the listing. *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) ("To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide *medical reports* documenting that the conditions meet the specific criteria of the Listings and the duration requirement. *See* 20 C.F.R. § 404.1525(a)-(d). (emphasis added)).

she walked without assistance. Tr. 478, 520. Finally, records in April 2018 show that Claimant reported that she was able to increase her daily activities such as walking, cleaning her home, and shopping. Tr. 710. This evidence undermines Plaintiff's argument that Claimant proved she met Listing 11.14A and is sufficient for the undersigned to conclude that the ALJ's determination that Claimant did not meet the listing is supported by substantial evidence. Accordingly, the undersigned finds no reversible error.

### C. Whether the ALJ Failed to Properly Evaluate Ms. Fernandez's Subjective Allegations.

Plaintiff argues that the ALJ failed to properly evaluate Claimant's subjective allegations because the ALJ used mere boilerplate language to discount Claimant's statements. (Doc. 13) at 12-14. Plaintiff continues that, while the ALJ followed up the boilerplate language with medical evidence in the record, the ALJ failed to explain how this medical evidence contradicted Claimant's allegations regarding her physical and mental impairments. *Id*.

Plaintiff's argument is without merit. The ALJ, in determining that Claimant's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence in the record, pointed to multiple pieces of medical evidence, including MRIs, x-rays, and objective examinations that showed mild or normal findings related to Claimant's impairments. Tr. 26. Some medical records even showed improvement with treatment. Tr. 26. After citing this evidence, the ALJ concluded: "These

records support some physical limitations, but not to the extent alleged by the claimant." Tr. 26.

The medical evidence cited by the ALJ and the discussion that subsequently followed support the ALJ's evaluation of Claimant's subjective allegations. *See Newberry v. Comm'r, Soc. Sec. Admin.*, 572 F. App'x 671, 672 (11th Cir. 2014) (finding that the ALJ did not err in discounting the claimant's subjective symptom assessment where it was clear that the ALJ considered the claimant's condition as a whole and pointed to specific evidence showing that the claimant's symptoms were inconsistent with the medical evidence). Therefore, the undersigned finds no reversible error.

## VI.    CONCLUSION

For all of the reasons given above, the undersigned concludes that the decision of the Commissioner is AFFIRMED.  A separate judgment will issue.

Done this 16th day of June, 2020.

/s/ Stephen M. Doyle
UNITED STATES MAGISTRATE JUDGE